J-S18045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| XAVIER BRASWELL | : | |
| | : | |
| Appellant | : | No. 3091 EDA 2022 |

Appeal from the PCRA Order Entered November 10, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008185-2016

BEFORE:   PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED AUGUST 1, 2023**

Appellant, Xavier Braswell, appeals from the order entered in the Court of Common Pleas of Philadelphia County, which denied his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was arrested in connection with the murder of Shelton Merritt, and represented by counsel, he proceeded to a jury trial, which resulted in a mistrial on November 3, 2017, when the jury failed to render a unanimous verdict.  On May 14,

_____

[*] Former Justice specially assigned to the Superior Court.

2018, Appellant, represented by counsel,[1] appeared for a jury retrial. The trial court summarized the testimony presented at the retrial as follows:

At about 11:45 p.m., on July 24, 2016, [Appellant], his cousin Alex Rice ("Rice"), his friend Robert Renfro ("Renfro"), Rice's sister Shadele Rice ("Shadele"), and a woman identified as "Lee Lee" entered the River Deck club on 417 North Columbus Boulevard in Philadelphia. Around the same time, a separate group of people including the decedent Shelton Merritt ("the decedent"), his friends Zachary Gorczynski ("Gorczynski") and Jonathan Jones (known as "Jalil"), and two other males arrived at the River Deck club. The latter group was not permitted to enter because two of its members were wearing T-shirts, so they continued to stand outside in line. N.T., 5/14/18, at 117-20; N.T., 5/15/18, at 179-89.

Inside the club, Renfro became involved in a fight and was kicked at and punched by multiple people. After the fight, Renfro told [Appellant] that he had been assaulted and pointed out the group of people who had done it. Soon after, Shadele approached Renfro and told him that Rice was involved in a fight outside the club. On his way out, Renfro observed [Appellant] in a fight with the same group of people with whom he had fought. Outside the club, Renfro saw the decedent and numerous other people assaulting Rice, with one individual hitting Rice with a bottle, which caused him to fall to the ground. N.T., 5/14/18, at 120; N.T., 5/15/18, at 112-21.

After the altercation with Rice, the decedent and his friends left the club and walked towards their car, a Ford Explorer SUV parked on the north side of Callowhill Street, near the intersection of Christopher Columbus Boulevard and about two blocks away from the River Deck. The group got into the vehicle, with the decedent seated in the back row. Shortly thereafter, [Appellant], Rice, and Renfro approached the vehicle. Rice and Renfro approached the driver's side, where they confronted Jones. [Appellant] approached the passenger's side of the vehicle, and Gorczynski exited the front passenger's seat to speak with him. [Appellant] asked Gorczynski to identify the person who had

_____

[1] At the jury retrial, Appellant was represented by Joseph Green, II, Esquire, who was lead defense counsel, and W. Fred Harrison, Esquire, who was co-counsel.

- 2 -

knocked out Rice, then drew a 9-millimeter semi-automatic handgun and pointed it at Gorczynki. [Appellant] pulled the trigger but the gun failed to fire. Gorczynski ran and told the group in the SUV that [Appellant] had a gun. The group exited the SUV, but the decedent, who was seated in the back row, was unable to escape the vehicle. [Appellant] fired nine times into the SUV, fatally shooting the decedent. N.T., 5/14/18, at 123-30; N.T., 5/16/18, at 229, 239; N.T., 5/17/18, at 238-39.

After the shooting, [Appellant] fled towards a nearby parking lot, pursued by Gorczynski and others. There, Gorczynski observed [Appellant] throw an object into the water. The object was never recovered. N.T., 5/14/18, at 123-30; N.T., 5/16/18, at 229, 239; N.T., 5/17/18, at 238-39.

At 11:45 p.m., Philadelphia Police Sergeant David DeCrosta responded to a priority radio call reporting gunshots. Upon arriving at the scene, he discovered the decedent lying with his torso outside of the SUV and his legs inside. Sergeant DeCrosta observed that the decedent had suffered a gunshot wound to the head and was bleeding heavily. He immediately placed the decedent into his patrol car and drove to Hahnemann University Hospital, where the decedent was pronounced dead at 12:07 a.m. N.T., 5/16/18, at 7-18.

Dr. Lindsay Simon, Associate Medical Examiner for the City of Philadelphia, performed the autopsy of the decedent. Dr. Simon concluded that the decedent had suffered one gunshot wound to the top of his head, five gunshot wounds to the back, and one gunshot wound to the right side of his neck. All of the gunshots were fired from an indeterminate range. The decedent also suffered abrasions on his arm caused by broken glass, as well as abrasions on his neck, right thigh, and the front of his right knee. There were no visible defensive wounds. Dr. Simon determined that the manner of death was homicide caused by multiple gunshot wounds. N.T., 5/14/18, at 63-95.

Around 11:45 p.m., Lieutenant Sean Dandridge of the Philadelphia Police Department arrived at the River Deck club in response to the fight, and he held a brief conversation with the manager outside the club. Lieutenant Dandridge then heard eight or nine shots in rapid succession. He got into his patrol vehicle and drove to a nearby parking lot where an unknown Latino male on a dirt bike stopped him, pointed towards [Appellant], and shouted, "He just shot my boy." Lieutenant Dandridge spotted [Appellant] running. [Appellant] ignored Lieutenant Dandridge's

commands to get on the ground for eight to ten seconds before complying. While Lieutenant Dandridge waited for backup to arrive, six males ran up from behind him, converged on [Appellant], and began punching and kicking him. Approximately thirty seconds later, more police cars arrived, and the other males fled. Lieutenant Dandridge and the other officers detained [Appellant], as well as Rice and Renfro, who were nearby, and transported them to the homicide unit at the Police Administration Building. N.T., 5/17/18, at 147-56.

At the homicide unit, Detective James Pitts interviewed Renfro, who identified [Appellant] as the shooter. Detectives Scally and Peterman interviewed Rice, who told them that [Appellant] was the only person standing by the SUV during the shooting. N.T., 5/15/18, at 145-48; N.T., 5/16/18, at 139-57.

In the early morning on July 25, 2016, [several officers, including] Officer Clyde Frasier of the Crime Scene Unit, arrived on the scene. Officer Frasier observed and photographed nine 9-millimeter fired cartridge casings ("FCCs"), as well as two bullet projectile fragments, blood stains, and shattered glass on the sidewalk near the SUV. Officer Frasier submitted the FCCs and projectiles to the Firearms Identification Unit. Ballistician Norman DeFields received the ballistic evidence and identified all nine FCCs as 9-millimeters, including eight Hornady Critical Defense Bullets, an expanding hollow-point type of bullet designed to create more damage. Officer DeFields determined that the ballistic evidence was consistent with someone shooting into the SUV. N.T., 5/17/18, at 9-44, 238-52.

At trial, Renfro testified that he saw [Appellant] shooting into the SUV. Rice testified that he did not remember going into the River Deck club because he was drunk, and that he only remembered being assaulted outside, passing by the SUV, then hearing gunshots and running towards the club. He testified that he did not see [Appellant] at the SUV, but at the intersection of Callowhill and Christopher Columbus streets during the shooting. He testified that he did not remember giving a statement to the police. Rice's testimony was impeached at trial by his police statement, as well as a video recording of his interview with detectives. N.T., 5/15/18, at 133-35; N.T., 5/16/18, at 132-88.

At trial, [Appellant] presented the testimony of Police Officers Patrick Greider and Gregory Neal, who came into contact with Jones shortly after the incident. [Appellant] also called to the stand independent firearm and forensic consultant Frederick

Wentling, who testified that the more a gun is fired, the more gunshot residue it causes, and forensic scientist, Hung Le, who tested [Appellant's] clothing and did not find any gunshot residue. Additionally, [Appellant] presented the testimony of Fatimot Adekanmbi, a member of the DNA laboratory within the City of Philadelphia's Criminalistics Unit, who examined [Appellant's] clothes and did not find the decedent's DNA. N.T., 5/18/18, at 6-13, 26-28, 51, 98-103, 114-19.

Trial Court Opinion, filed 8/6/18, at 2-5.

At the conclusion of all evidence, on May 21, 2018, the jury convicted Appellant of first-degree murder and related firearm offenses. *See* 18 Pa.C.S.A. §§ 2502(a), 6108, and 907(a). On May 21, 2018, the trial court imposed the mandatory term of life in prison for first-degree murder, as well as a concurrent aggregate term of one year to two years in prison for the firearm offenses. Appellant filed timely post-sentence motions, which the trial court denied.

Appellant filed a timely direct appeal to this Court presenting the following sole issue: "Did the trial court cause structural error by repeatedly interjecting its comments during witness testimony and chastising defense counsel in front of the jury, [and] deny Appellant a fair trial?" ***Commonwealth v. Braswell***, No. 1893 EDA 2018, at *2 (Pa.Super. filed 9/11/19) (unpublished memorandum). This Court found the issue to be waived and, in the alternative, found no merit to the claim. ***See id.*** Accordingly, we affirmed Appellant's judgment of sentence. ***See id.*** On March 4, 2020, our Supreme Court denied Appellant's petition for allowance of

appeal, and Appellant did not file a petition for a *writ of certiorari* with the United States Supreme Court.

On or about May 28, 2021, Appellant filed a timely, *pro se* PCRA petition,[2] and after Appellant filed a supplemental *pro se* PCRA petition, the PCRA court appointed counsel, who sought to withdraw. Appellant then retained private counsel, who filed a supplemental PCRA petition on behalf of Appellant on November 30, 2021.

On March 15, 2022, the PCRA court provided Appellant with notice of its intent to dismiss the PCRA petition without a hearing; however, Appellant filed a response, and a supplemental response, in opposition thereto. On July 17, 2022, the PCRA court held an evidentiary hearing, and on August 11, 2022, the parties filed post-hearing briefs. On August 13, 2022, Appellant filed a motion for a supplemental PCRA hearing, which the trial court granted, and on September 9, 2022, the PCRA court held a supplemental evidentiary hearing.

_____

[2] Appellant's judgment of sentence became final on June 2, 2020, ninety days after our Supreme Court denied Appellant's petition for allowance of appeal and the time to file a *writ of certiorari* with the United States Supreme Court expired. **See** U.S. Supreme Court Rule 13 (effective January 1, 1990) (stating that a petition for *writ of certiorari* to review a judgment of sentence is deemed timely when it is filed within 90 days). Thereafter, Appellant filed his PCRA petition on May 28, 2021, which is within one year of when his judgment of sentence became final. **See** 42 Pa.C.S.A. § 9545(b)(1). Accordingly, Appellant's first PCRA petition was timely filed.

By order entered on November 10, 2022, the PCRA court denied Appellant's PCRA petition. The PCRA court filed an opinion in support of its order on November 14, 2022. This timely, counseled appeal followed on November 30, 2022. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and consequently, no such statement was filed.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Presented" (verbatim):

I. Whether the PCRA court erred in finding trial counsel was not ineffective where trial counsel did not interview and call two alibi witnesses?

II. Whether the PCRA court erred in finding trial counsel was not ineffective for not filing a motion to suppress or otherwise exclude the prior statements and testimony of Robert Renfro and Alex Rice which were coerced by police with promises that they would not be charged with murder if they gave statements shifting blame for the murder to [Appellant]?

III. Whether the PCRA court erred in finding that trial counsel was not ineffective for failing to object to the prosecutor's closing argument, which relied on a series of false misrepresentations in an effort to explain why there was no physical evidence implicating [Appellant] in the murder?

IV. Whether Appellant was convicted based on the knowing use of false testimony by the prosecution team?

Appellant's Brief at 2 (unnecessary bold and capitalization omitted).

Initially, we note our standard of review for an order denying PCRA relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 652 (2008). "We must accord great deference to

the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." ***Commonwealth v. Scassera***, 965 A.2d 247, 249 (Pa.Super. 2009) (citation omitted).

As relevant here, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). In reviewing Appellant's ineffective assistance of counsel claims, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. ***Commonwealth v. Ali***, 608 Pa. 71, 10 A.3d 282 (2010).

To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.*** at 291 (citations omitted).

> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. [C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (citations omitted). *See Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409, 419 (2009) ("A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.") (citation omitted)). "A claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa.Super. 2013) (*en banc*) (citation omitted).

Regarding the reasonable basis prong of the ineffective assistance of counsel test, our Supreme Court has relevantly stated the following:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest….[T]his cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests." Our evaluation of counsel's performance is "highly deferential."

*Commonwealth v. Williams*, 636 Pa. 105, 141 A.3d 440, 463 (2016) (citations and quotations omitted).

Further,

> To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294, 311-12 (2014) (citations, quotation marks, and quotations omitted). *See Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 472 (2004) ("[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings.") (quotation omitted)).

In his first issue, Appellant claims trial counsel was ineffective in failing to personally interview[3] and call two potential alibi witnesses, Demetrius Tilley ("Tilley") and Kyle Lloyd ("Lloyd"), to testify at trial. Appellant contends that, if called to testify, "[e]ach man [would have] confirmed that Appellant [was] with him on the date and time of the shooting." Appellant's brief at 15. Specifically, Appellant avers the two men would have testified they were standing with Appellant outside of the River Deck club at the time the shooting began, and Appellant did not have a gun. *Id.* at 15-16. The Commonwealth contends Appellant's ineffectiveness claim fails because he voluntarily waived the right to call additional witnesses at trial. After a careful review, we agree.

---

[3] Appellant admits that, at the direction of trial counsel, the defense's private investigator interviewed Tilley and Lloyd prior to trial; however, he contends trial counsel was ineffective in failing to personally interview the two men. Appellant's Brief at 15.

At Appellant's jury trial, the following exchange occurred on-the-record between the trial court and Appellant at the conclusion of all evidence and before the attorneys' closing statements:

> THE COURT: Have you made a decision as to whether or not you wish to testify?
>
> [APPELLANT]: No. Not yet, Your Honor.
>
> THE COURT: Okay. Well, the other things that I'm going to do is when you come back [from lunch] I'm going to ask you whether or not anyone forced you, promised you anything in order for you to make your decision.
>
> Before we take our lunch recess, do you have any questions about the right to testify, about your right to testify for me?
>
> [APPELLANT]: No, Your Honor.
>
> **THE COURT: Are there any witnesses that you wanted your attorneys to call that they have not called?**
>
> **[APPELLANT]: No.**
>
> **THE COURT: All right. So, they've presented the case, the defense that you've asked them to present?**
>
> **[APPELLANT]: Yes.**

N.T., 5/18/18, at 152 (emphasis added).[4]

In **Commonwealth v. Mallory**, 596 Pa. 172, 941 A.2d 686 (2008), our Supreme Court held:

> [A]n on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise, e.g., waiver of a trial, waiver of the right to counsel, **waiver of the right to call witnesses**, waiver of the right to cross-examine witnesses, waiver of rules-based speedy trial time limits, etc.

_____

[4] When the trial court returned from the lunch recess, Appellant waived his right to testify.

- 11 -

*Mallory*, *supra*, 941 A.2d at 697 (emphasis added).

Similarly, in *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294 (2002), our Supreme Court recognized that "a defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision." *Paddy*, *supra*, 800 A.2d at 316. To hold otherwise, the Supreme Court indicated, "would allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." *Id.* In *Paddy*, the defendant complained of trial counsel's ineffectiveness for failing to call alibi witnesses, in response to which our Supreme Court held that "this ineffectiveness claim fails for the fundamental reason that Paddy agreed at trial to his attorney's decision not to call the witnesses in question." *Paddy*, *supra*, 800 A.2d at 315.

Subsequently, in *Commonwealth v. Brown*, 649 Pa. 293, 196 A.3d 130 (2018), our Supreme Court was asked to determine whether an appellant's trial counsel was ineffective in failing to present a witness at trial to impeach another witness's trial testimony. In concluding the appellant was not entitled to relief on the ineffectiveness claim, our Supreme Court noted the following colloquy occurred during the appellant's trial:

> The Court: Now, sir, are there any witnesses that you wanted to call or anything that you discussed with [trial counsel] that is not going to happen at this trial? And I know that there's a few witnesses that are going to be called, and why don't we just state for the record who those are.

- 12 -

[Trial Counsel]: Judge, I intend to call Police Officer Kevin Fant, F-A-N-T, and Detective Gregory Rodden, R-O-D-D-E-N, who was the assigned detective in this case. And we may call the crime scene detective who did the crime scene, Detective David Baker and Detective George Fetters. Detective Fetters has not yet arrived. We've only interviewed Detective Baker.

The Court: Okay. So those are all the police witnesses. Were there any other names that you gave to [trial counsel] for the trial portion of this case, not the penalty phase, that you expected to testify and whose names just did not hear mentioned?

[Brown]: Negative.

The Court: All right. And are you satisfied with the representation that you have received from your counsel.

[Brown]: Yes.

**Brown**, **supra**, 196 A.3d at 173–74 (citation to record omitted).

Applying the reasoning of **Mallory** and **Paddy**, our Supreme Court held:

Brown asserts that trial counsel should have presented another witness, Akines-Harris, to impeach Anderson's credibility.

\*\*\*

As the record reflects, Brown participated in a colloquy at which he was advised of all of the witnesses his trial counsel intended to call in his defense, and he expressly acknowledged that after consulting with trial counsel, there were no other witnesses he wanted to testify on his behalf. As Brown voluntarily agreed that he did not want to call any other witnesses, he cannot now complain about trial counsel's failure to call Akines-Harris to testify.

**Brown**, **supra**, 196 A.3d at 174.

In the case *sub judice*, similar to as occurred in **Brown**, Appellant participated in a colloquy at trial in which he specifically confirmed there were no other witnesses he wanted his trial attorneys to call, and the defense presented the case, which Appellant wanted them to present.  N.T., 5/18/18,

- 13 -

at 152. Since Appellant voluntarily agreed he was satisfied with the case presented by his attorneys, and there were no other witnesses he wanted his attorneys to call, he cannot now complain about his attorneys' failure to investigate further and call Tilley or Lloyd to testify. Thus, Appellant is not entitled to relief on this claim. *See Brown*, *supra*. *See also Commonwealth v. Lawson*, 762 A.2d 753, 756 (Pa.Super. 2000) (in rejecting claim trial counsel was ineffective in failing to investigate and call additional witnesses at trial, the court held the appellant voluntarily waived his right to call witnesses at trial during a colloquy, so he could not later claim ineffective assistance or purport he was coerced by counsel).

In his next issue, Appellant claims trial counsel was ineffective in failing to file a motion seeking to suppress or otherwise exclude Renfro's and Rice's prior statements, as well as their testimony. Appellant avers the "testimony and statements of Renfro and Rice were tainted by police misconduct including promises of immunity from prosecution if they were willing to shift the blame to Appellant." Appellant's Brief at 24. Intertwined within this argument, Appellant claims trial counsel was ineffective in failing to ensure the jury was aware that detectives allegedly coerced Renfro's and Rice's statements, which implicated Appellant.

In concluding Appellant is not entitled to relief, the PCRA court relevantly indicated the following:

> [Appellant] alleges that trial counsel was ineffective for failing to insist that the jury be informed that Renfro's and Rice's

testimony [and statements] were corrupted by police promises. This claim [is meritless] as the jury was informed of the police's alleged promises to Renfro and Rice on cross-examination. Trial counsel conducted an extensive cross-examination of Renfro wherein he questioned Renfro about his statement to the police following the shooting and the circumstances surrounding his statements. Trial counsel questioned Renfro about his prior testimony at the preliminary hearing when he stated that police told him he would not be charged if he cooperated. At trial, Rice claimed that he did not remember his statement to the police despite being shown his signed statement and a videotape of the interview. Detective Timothy Scally was called to testify regarding Rice's statement, and he testified that no promises or threats were made to Rice to coerce his statement. The [trial] court also provided a jury instruction regarding witness credibility informing the jurors that they "may consider whether the witness had any potential bias or interest and whether the witness testified for the prosecution to gain favorable treatment in his own case." N.T., 5/16/18, at 37-40, 50-51, 152-53; N.T., 5/17/18, at 85; N.T., 5/21/18, at 15.

In his [next] claim, [Appellant] assert[s] that trial counsel was ineffective for failing to file a motion to suppress or exclude the statements of Renfro and Rice based on the alleged police coercion....The statements [of Renfro and Rice] were properly admitted at trial as a prior consistent statement for Renfro and a prior inconsistent statement for Rice, who claimed that he did not remember ever giving a statement to the police. Trial counsel cannot be found to be ineffective for failing to raise a baseless or frivolous claim. Since a motion to suppress or exclude would have been frivolous, trial counsel is not ineffective for failing to file it. [Appellant's] ineffectiveness claim lacks arguable merit.

Even if this claim had arguable merit, it would still fail as [Appellant] has not demonstrated that there is a reasonable probability that the result of the proceedings would have been different if Renfro's and Rice's statements [and testimony] were suppressed or excluded....[Appellant] was...identified as the shooter by Gorczynski and Jonathon Jones ("Jones") at trial.

PCRA Court Opinion, filed 11/14/22, at 24-25.

We agree with the PCRA court's sound reasoning. Regarding Appellant's

claim trial counsel was ineffective in failing to ensure the jury was aware of

- 15 -

alleged police coercion as it relates to Renfro and Rice, the record is clear the jury heard the circumstances surrounding Renfro's and Rice's statements. Simply put, trial counsel extensively cross-examined Renfro and Rice about their police statements,[5] thus there is no merit to the underlying ineffectiveness claim. **See Johnson**, **supra** (holding trial counsel cannot be ineffective if underlying claim is meritless).

Moreover, as it relates to Appellant's claim trial counsel was ineffective in seeking to suppress or exclude the statements and testimony of Renfro and Rice based on alleged police coercion, we agree with the PCRA court there is

---

[5] At trial, Renfro testified on direct examination by the Commonwealth that Appellant was the shooter. On cross-examination, trial counsel asked Renfro whether the police told him that if he cooperated with the Commonwealth he would not be charged, and Renfro answered, "I don't recall." N.T., 5/16/18, at 37. Accordingly, trial counsel confronted Renfro with his preliminary hearing testimony in which Renfro testified the police told him that, if he cooperated, he would not be charged. **Id.** at 38-39. Renfro acknowledged he testified in such a manner at the preliminary hearing. **Id.** at 39-40. Renfro also admitted during cross-examination that he cooperated with the police because he didn't want to be charged with a murder. **Id.**

At trial, Rice testified on direct examination by the Commonwealth that he remembered hearing gunshots at the time in question, but he didn't remember anything else about the shooting. **Id.** at 137. He testified on direct that he did not remember talking to homicide detectives or making a statement, let alone a statement that incriminated Appellant. **Id.** at 138-39. When the Commonwealth confronted him with his police statement, which was inconsistent with his trial testimony, Rice testified he did not remember making the statement. **Id.** at 138-60. On cross-examination, trial counsel asked Rice about the shooting, and Rice indicated he had no memory of where Appellant was located during the shooting. **Id.** at 201. The Commonwealth then presented the testimony of Detective Scally, who testified he did not promise Rice anything or threaten him to give a statement. N.T., 5/17/18, at 85.

no merit to the underlying claim. Simply put, Appellant did not meet his burden of demonstrating Renfro and Rice were "coerced" by the police, and there was no basis for trial counsel to seek exclusion of their statements or testimony on this basis. *See id.*

Additionally, we agree with the trial court that, assuming, *arguendo*, there is arguable merit to Appellant's claim, he failed to demonstrate prejudice. Given the overwhelming evidence of Appellant's guilt, including the eyewitness testimony of Gorczynski and Jones, who identified Appellant as the shooter, Appellant has not demonstrated that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Spotz*, *supra*, 84 A.3d at 311-12 (citations, quotation marks, and quotations omitted).

In his next issue, Appellant contends trial counsel was ineffective in failing to object to statements made by the prosecutor during closing argument. Appellant avers the prosecutor improperly made false statements to explain why there was no physical evidence implicating Appellant in the murder. He concludes these false statements were highly prejudicial.

We analyze Appellant's underlying claim with the following relevant legal precepts in mind:

> In accord with the long-standing principle that a "prosecutor must be free to present his or her arguments with logical force and vigor," this Court has permitted prosecutorial advocacy "as long as there is a reasonable basis in the record for the [prosecutor's] comments." *Commonwealth v. Robinson*, 581 Pa. 154, 864 A.2d 460, 516–17 (2004). Prosecutorial comments

based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair. Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. ***Id.*** Any challenged prosecutorial comment **must not be viewed in isolation,** but rather must be considered in the context in which it was offered. ***Robinson***, ***supra***, 864 A.2d at 517.

It is improper for a prosecutor to offer his or her personal opinion as to the guilt of the accused or the credibility of any testimony. ***Commonwealth v. DeJesus***, 580 Pa. 303, 860 A.2d 102, 112 (2004). However, it is well within the bounds of proper advocacy for the prosecutor to summarize the facts of the case and then ask the jury to find the accused guilty based on those facts. ***See id.***

The standard by which the court considers allegations of improper prosecutorial comments is a stringent one:

> Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111, 1146-47 (2011)

(citations omitted) (emphasis in original).

In the case *sub judice*, Appellant avers the prosecutor misrepresented the evidence when "she stated that Appellant obtained a gun from his blue Acura, which was parked in the club's parking lot." Appellant's Brief at 28. Appellant also avers the prosecutor misrepresented the evidence when she "told the jury that Appellant threw the gun into the river."[6] ***Id.***

---

[6] We note with disapproval that Appellant has not set forth the place in the certified record where the prosecutor made the statements, which he is now challenging. However, the PCRA court has set forth specific page numbers in its opinion, and, thus, we shall refer to the relevant passages appearing at those cited page numbers in our analysis.

Regarding the first challenged statement, in context, the prosecutor indicated the following:

> The Defendant—the video stops at 11:32. That's as much video as we had from the organization, the club, 11:32.
>
> If I do my math right…that should be 13 minutes away from 11:45. But if I messed it up, you all can do the math.
>
> So, the Defendant had 13 minutes to go from the club to his car to get the gun. And that's where the gun was, he wasn't partying with the gun on his waist. The gun was in the car. He went to the car, and he got that gun because his car, that little blue Acura, was parked in the lot. That same lot that he went to, to try to run back to, to get away from.

N.T., 5/18/18, at 240-41.

Regarding the second challenged statement, in context, the prosecutor indicated the following:

> Let's deal with—let's deal with the chase for a minute before we go to identification.
>
> Zack [Gorczynski] said he chased the Defendant down Callowhill, across Delaware, Columbus Avenue and saw him toss a gun.
>
> Now, the cops said, "We looked for the gun, but we couldn't find it. If it was a little to the left, we could have missed it. A little to the right, we could have missed it. We got on our hands and our knees, on August 8th, and we tried to find it, but we couldn't find it."
>
> We know he had a gun because he is the only person ever, ever, ever, ever, ever that any of the witnesses said that they saw shooting.
>
> We know Officer Frasier searched that area thoroughly for a gun; up the street, under cars, around and so on and so forth. And we also know that the river is right there. Right there (indicating).
>
> And the testimony of Gorczynski was that the Defendant threw that gun away even before he got to [Lieutenant] Dandridge, before he got to Dandridge.

*Id.* at 226-27.

In analyzing these passages, and concluding Appellant was not entitled to relief on his ineffectiveness claim, the PCRA court indicated the following:

> [Appellant] has failed to show that trial counsel was ineffective because the statements made by the prosecutor were not improper and did not violate any constitutionally or statutorily protected right. The comments made by the prosecutor during closing argument were supported by or were fair inferences from the evidence presented at trial. The prosecutor's remarks were also fair responses to comments made by trial counsel during closing argument.
>
> The prosecutor's comment about [Appellant] retrieving a gun from his car before the shooting was proper as it is based upon a reasonable inference from the evidence presented at trial. The prosecutor's comment is based on the amount of time between when [Appellant] left the club and when the shooting occurred. Surveillance video from the River Deck club showed [Appellant] leaving the club at approximately 11:32 p.m. A police radio call reported gunshots fired at about 11:45 p.m. Renfro also provided testimony that [Appellant] did not have a gun at the club prior to the shooting, and Renfro did not know where [Appellant] was between leaving the club and the shooting. The prosecutor's comment was a fair inference from the evidence presented that [Appellant] retrieved a gun from his car before the shooting. N.T., 5/15/18, at 196-98; N.T., 5/16/18, at 7-8, 101, 104-05; N.T., 5/18/18, at 241.
>
> ***
>
> The prosecutor's references to [Appellant] throwing a gun into the river were permissible because they were based on evidence introduced at trial. Although the Philadelphia Police Marine Unit conducted a search of the river and failed to find a gun, the prosecutor's references were supported by Gorczynski's testimony. At trial, Gorczynski stated that he saw [Appellant] throw a gun into the river as he was chasing him. The prosecutor's references were also a fair response to trial counsel's closing argument in which he stated that Gorczynski's testimony that he saw [Appellant] throw the gun in the river should not be credited. N.T., 5/14/18, at 129, 185; N.T., 5/18/18, at 187-88, 226-27.

\*\*\*

   [Appellant] has also failed to establish that the prosecutor's comments prejudiced him. None of the prosecutor's statements during closing argument violated any of [Appellant's] constitutional or statutory rights. The prosecutor's statements were not so prejudicial that they caused the jury to form a bias or hostility toward [Appellant] that would make them incapable of weighing the evidence and rendering a verdict in a fair manner. Additionally, the [trial] court instructed the jury repeatedly that the questions and arguments of counsel are not to be considered evidence. Jurors are presumed to follow the court's instructions. **See Commonwealth v. Aikens**, 641 Pa. 351, 168 A.3d 137, 143 (2017); N.T., 5/14/18, at 26, 30-31; N.T., 5/18/18, at 167. As the prosecutor's comments were not improper and did not prejudice [Appellant], trial counsel was not ineffective for failing to object.

PCRA Court Opinion, 11/14/22, at 22-24 (citation omitted).

   We agree with the PCRA court's sound reasoning. Simply put, the prosecutor's statements were based on fair and reasonable inferences arising from the testimony and evidence presented during trial, as well as a fair response to the defense's closing argument.[7] **See Chmiel**, **supra**. Accordingly, there was no basis for trial counsel to object. **Id.** Moreover, as the PCRA court indicated, the trial court's jury instruction, which indicated the

---

[7] For example, during closing argument, defense counsel suggested Appellant did not have a gun during the time of the shooting since the River Deck club pats people down for weapons before they enter the club, and Appellant had just exited the club before the shooting occurred. N.T., 5/18/18, at 183. Also, during closing argument, defense counsel pointed to Gorczynski's testimony that Appellant dropped the gun in the water by the parking lot, and defense counsel indicated, "We know that ain't so." **Id.** at 187. The prosecutor was permitted to make arguments during closing, which were a fair response to the defense arguments and supported by the record. **See Chmiel**, **supra**.

attorneys' arguments are not evidence, cured any potential prejudice. *See Commonwealth v. Stokes*, 576 Pa. 299, 839 A.2d 226, 244 (2003) (holding a trial court's instruction that a prosecutor's comments do not constitute evidence removed any prejudice, as the jury is presumed to follow the court's instructions; counsel was not ineffective for failing to object). Thus, Appellant is not entitled to relief on his ineffective assistance of counsel claim. *See Ali*, *supra*.

In his final issue, Appellant claims he has "new evidence" that the prosecutor permitted false testimony against Appellant at trial. Specifically, he contends he has discovered "Detective Pitts has been charged with two counts of felony perjury."[8] Appellant's Brief at 30. He reasons that Pitts' misconduct in an unrelated case is evidence that Pitts must have "engaged in objective police misconduct designed to corrupt [Appellant's] trial by offering immunity to a person in exchange for testimony shifting the blame to another person." *Id.*

Initially, we note that a claim of after-discovered evidence is cognizable under the PCRA. *See* 42 Pa.C.S. § 9543(a)(2)(vi).

> To obtain relief based upon newly-discovered evidence under the PCRA, [the petitioner] must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is

---

[8] Appellant does not explain when he learned of the charges against Detective Pitts in the unrelated case. However, the PCRA court notes Detective Pitts was charged on March 3, 2022, which was during the pendency of Appellant's instant PCRA petition.

- 22 -

not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

***Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586, 595–96 (2007).

The standard on PCRA review is whether "the new evidence 'would have changed the outcome of the trial if it had been introduced.'" ***Commonwealth v. Soto***, 983 A.2d 212, 216 (Pa.Super. 2009) (quoting 42 Pa.C.S.A. § 9543(a)(2)(vi)). Where, as here, the claim is based on the improprieties of an investigating police officer, the petitioner must demonstrate a nexus between the improprieties and the petitioner's claim for relief. ***See Commonwealth v. Foreman***, 55 A.3d 532 (Pa.Super. 2012).

In rejecting Appellant's claim of after-discovered evidence, the PCRA court relevantly indicated the following:

> [Appellant] raised [an] issue alleging misconduct by Detective James Pitts, who conducted Renfro's police interview….This claim amounts to an after-discovered evidence claim.
>
> ***
>
> On March 3, 2022, Detective Pitts was charged with two counts of felony perjury. Detective Pitts is alleged to have physically assaulted a defendant in another case to obtain a confession and later lied about the interaction during his testimony at [the defendant's] trial. Although Detective Pitts conducted Renfro's interview, [Appellant] has not presented any factual averments which show any misconduct by Detective Pitts in this case. [Appellant] has not alleged with any specificity any actions taken by Detective Pitts which would amount to misconduct. Renfro's interview was recorded, and the video does not show any inappropriate conduct by the police throughout the interview. Renfro's testimony at trial was consistent with his statement to the police, and Renfro has never alleged that there

- 23 -

was any misconduct by any of the detectives involved in his interview.

[Appellant] is not entitled to relief based on Detective Pitts' alleged misconduct in an unrelated case. At most, [Appellant's] claim of misconduct by Detective Pitts could only be used to impeach the credibility of Renfro. *See Commonwealth v. Johnson*, 179 A.3d 1105, 1123 (Pa.Super. 2018) (filing of criminal charges against detectives in an unrelated matter does not meet the after-discovered evidence test since such evidence would be used solely to impeach).

Even without Renfro's testimony, a different verdict is not likely if a new trial were granted in this case. As [Appellant] has failed to establish that the evidence would not be solely used to impeach the credibility of a witness, and that there is no reasonable probability that the introduction of the evidence would result in a different verdict, [Appellant's] after-discovered evidence claim concerning Detective Pitts fails.

PCRA Court Opinion, filed 11/14/22, at 25-27.

We agree with the PCRA court's sound reasoning. Absent proof that Detective Pitts committed misconduct in Appellant's case, the evidence of his misconduct in an unrelated case could only be used for impeachment purposes if Appellant were granted a new trial. *Washington*, *supra*. Also, given overwhelming evidence of Appellant's guilt, including the eyewitness identification testimony of Gorczynski and Jones, Appellant has failed to demonstrate this "new evidence" would likely compel a different verdict. *Id.* Thus, Appellant cannot satisfy the after-discovered evidence test. *See Johnson*, *supra*.

For all of the aforementioned reasons, we affirm.

Affirmed.

- 24 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/1/2023